ELLEN M. HARDING *vs.* DAVID M. BIGGS.

Suffolk. November 15, 1898. — March 2, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Eminent Domain — Location of Railroad — Trespass.*

The D. & M. Railroad Company was chartered by St. 1846, c. 228, to construct a railroad, beginning at or near the depot of the O. C. Railroad at N. Village in D., and thence to some convenient point in D. or M. at or near the Upper Mills. On April 15, 1847, the company filed a written instrument and a plan purporting to be a location conformably to the statute. The written location described a line which it declared was the centre line for a single track, and which "commences at the centre between the track of the O. C. Railroad opposite the southerly corner of N. Depot in D." From this terminus the line was exactly described by definite courses and distances for a length of some 16,085 feet. The other terminus was not fixed otherwise than by the given courses and distances from the place of beginning; but the instrument stated that the described line conformed to the line described in the charter, which required that end of the railroad to be at some convenient point at or near the Upper Mills. The written location, after stating that the line described "is the centre line for a single track," stated further that "the width of line taken varies from

two to five rods, according as the embankments or excavations require." A., who owned a tract of land through which the railroad was built, brought an action of trespass against B. for removing in 1894 from land by the side of the railroad track a train load of gravel there delivered to him at a place where the railroad bordered on A.'s land. The court ruled that the location constituted a valid location two rods in width and no more, of which the centre line was defined, and found that no act was done by the defendant outside of the railroad location. *Held,* that there was a valid location two rods in width.

TORT, for breaking and entering the plaintiff's close and placing thereon certain gravel and sand. Trial in the Superior Court, before *Mason,* C. J., who found for the defendant, and found specially that no act of alleged trespass was committed upon the plaintiff's premises outside the two-rod location acquired by the original location of the railroad; and the plaintiff alleged exceptions, the nature of which appears in the opinion.

*G. P. Wardner,* for the plaintiff.

*C. F. Kittredge,* for the defendant.

BARKER, J. The plaintiff owns a tract of land through which the Dorchester and Milton Branch Railroad Company, about fifty years ago, built its railroad. In May, 1894, the defendant removed from land by the side of the railroad track a train load of sand and gravel there delivered to him at a place where the railroad borders on the plaintiff's land, and this act is the alleged trespass. At the trial the plaintiff asked the court to rule that the location filed by the railroad company on April 15, 1847, was invalid, and that the company acquired no rights thereby, but had only such rights in the plaintiff's land as it had acquired by actual use and occupation. The court declined so to rule, and ruled that the location constituted a valid location two rods in width and no more, of which the centre line was defined, and found that no act was done by the defendant outside of the railroad location. The question for decision is whether the court should have ruled that the location was not a sufficient compliance with the statute, and that the railroad company acquired no rights thereby.

The railroad company was chartered by St. 1846, c. 228, with authority to locate, construct, and maintain a railroad, beginning at or near the depot of the Old Colony Railroad at Neponset Village in Dorchester, and thence to some convenient point in Dorchester or Milton, at or near the Upper Mills. See St.

1846, c. 228, §§ 1, 2, 4, 5. On April 15, 1847, the company filed a written instrument and a plan purporting to be a location of its railroad made in conformity with the statute. In the year 1848 the existence of the company was recognized by the Legislature in the passage of St. 1848, c. 130, authorizing the company to increase its capital stock. See also St. 1849, c. 180, § 5; St. 1851, c. 283; St. 1852, c. 124; St. 1854, c. 421, §§ 2, 5, 6; St. 1857, c. 162; St. 1861, c. 51; St. 1863, c. 205.

We are of opinion that as to the owners of land through which the railroad was built and has been maintained the location cannot now be held void, and that it gave to the company at least the right which the court below ruled that the location gave. It appears from the charter that there was a depot of the Old Colony Railroad at Neponset Village in Dorchester, near which depot was the track of that railroad. The written location describes a line which it declares is the centre line for a single track, and which "commences at the centre between the track of the Old Colony Railroad opposite the southerly corner of Neponset Depot in Dorchester." This terminus is fixed and defined by the two structures referred to then existing. From this terminus the line is exactly described by definite courses and distances for a length of some 16,085 feet. The other terminus is not fixed by the written instrument otherwise than by the given courses and distances from the place of beginning; but the instrument further states that the described line conforms to the line described in the charter, which required that end of the railroad to be at some convenient point at or near the Upper Mills. It is not contended that this terminus could not be identified by the plan as being in fact near the Upper Mills, nor that the written description of the location or the line laid down upon the plan does not coincide with the actual line of the railroad. The written location, after stating that the line described "is the centre line for a single track," states further that "the width of line taken varies from two to five rods, according as the embankments or excavations require." Whether this instrument was effectual to give the company any rights in land outside of the two-rod strip, and whether an owner of land outside of that strip, which land was used in making embankments and excavations, could be heard at this

late day to contend that as to the land used for such embankments and excavations the location gave the company no rights, there is now no occasion to consider, and upon those questions we express no opinion.  The uncertainty which attaches to the taking outside that strip " as the embankments or excavations require " does not make it necessary to hold the instrument invalid or void, so far as it makes an appropriation of a defined and ascertained strip two rods in width.

None of the decisions cited by the plaintiff go to that extent. In *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574, the location was not held void, but the land occupied by the railroad was shown not to be within the location, and it was held that the defendant could not resort to extrinsic evidence to show that its intention was to have included the land.  *Glover* v. *Boston*, 14 Gray, 282, was the case of the laying out of a highway, and there was neither in the laying out nor the plan any clear statement that the plaintiff's land was included in the layout.  In *Wilson* v. *Lynn*, 119 Mass. 174, the plan was not referred to in the written instrument of taking, and did not appear to have been filed with it, and the land could not be identified by the description filed, although if the plan had been referred to as part of the description it might have been sufficient.  In *Derby* v. *Framingham & Lowell Railroad*, 119 Mass. 516, the location was held void because the railroad company had no right to file it.  In *Housatonic Railroad* v. *Lee & Hudson Railroad*, 118 Mass. 391, the location encroached without right upon land already devoted to a public use, and was also void because the location as filed did not state the width of the land taken or the boundaries, and the map on file was not referred to or made part of the location.  In *Wamesit Power Co.* v. *Allen*, 120 Mass. 352, the taking was void because no written instrument was filed. And in *Lexington Print Works* v. *Canton*, 167 Mass. 341, the taking was void because in excess of the power vested in the officials who made and filed the instrument of taking.  It is also to be noted that in none of these cases had any considerable number of years elapsed between the time when the right to take land had been exercised and that when the validity of the taking was questioned.  While no doubt, as against one who claims under an exercise of the right of eminent domain, the

presumption is in favor of the owner of the land, that presumption in a case like the present is to be weighed with the presumption which comes from long acquiescence of the owner in uses of the land which can be justified only by a taking, the validity of which was at the time a question of importance to the Commonwealth, as well as to the landowners, and the validity of which seems not to have been questioned for nearly half a century.                                        *Exceptions overruled.*